IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., trustee,<br><br>*Plaintiffs,*<br><br>v.<br><br>LEDDA BROTHERS, INC., a Michigan corporation; GIULIO LEDDA, an individual; BRUNO LEDDA, an individual; and GIUSEPPE CICARELLI, an individual;<br><br>*Defendants.* | Case No. 16-cv-9431<br><br>Judge<br><br>Magistrate Judge |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., trustee, allege as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*

2. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3. Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is administered at its principal place of business in Rosemont, Illinois.

## PARTIES

4. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Arthur H. Bunte, Jr., is a present trustee and fiduciary of the Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund at its offices in Rosemont, Illinois.

6. Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

7. Defendant Ledda Brothers, Inc. ("Ledda Brothers") is or was a corporation organized under the laws of Michigan.

8. Defendant Giulio Ledda is an individual who resides in Michigan.

9. Defendant Bruno Ledda is also an individual who resides in Michigan.

10. Defendant Giuseppe Cicarelli is also an individual who resides in Michigan.

## FACTUAL BACKGROUND

**I.    The Nu-Cast Controlled Group.**

11. Non-party Nu-Cast Step and Supply, Inc. ("Nu-Cast") is a corporation organized under the laws of Michigan.

12. On or about December 22, 2013, Defendants Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli each owned stock in Nu-Cast and, collectively, owned all of Nu-Cast's stock.

13. Similarly, on or about December 22, 2013, Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli each owned stock in Ledda Brothers and, collectively, owned all of Ledda Brothers' stock.

14. Accordingly, on or about December 22, 2013, Nu-Cast and Ledda Brothers were a group of trades or businesses under common control (the "Nu-Cast Controlled Group") and therefore constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

15. The Nu-Cast Controlled Group is the "employer" for purposes of determining and assessing withdrawal liability under ERISA.

**II.     The Withdrawal Liability.**

16. During all relevant times, Nu-Cast was bound by collective bargaining agreements with a certain local union (the "Local Union") affiliated with the International Brotherhood of Teamsters under which Nu-Cast was required to contribute to the Fund on behalf of certain of its employees.

17. The Fund determined that on or about December 22, 2013, the Nu-Cast Controlled Group permanently ceased to have an obligation to contribute to the Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Fund within the meaning of 29 U.S.C. § 1383 (the "Withdrawal").

18. As a result of the Withdrawal, the Nu-Cast Controlled Group incurred withdrawal liability to the Fund in the principal amount of $1,957,424.40, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

19. Further, on or about March 17, 2014, the Nu-Cast Controlled Group, through Nu-Cast, received a notice and demand for payment of the Withdrawal Liability that the Fund issued

in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). In the Notice and Demand, the Fund notified the Nu-Cast Controlled Group that its total withdrawal liability was $1,957,424.40, and that the Nu-Cast Controlled Group was required to discharge its liability either in a lump sum or in monthly payments of $8,755.99, beginning with a payment due on or before April 1, 2014.

20. After receiving the Notice and Demand, the Nu-Cast Controlled Group initially made its required interim payments. Specifically, from April 1, 2014 through June 30, 2015, the Nu-Cast Controlled Group made interim payments in the total amount of $140,095.84, $104,441.80 of which was applied to the principal amount of the Withdrawal Liability.

21. On June 12, 2014, the Fund received from Nu-Cast a request for review of the Withdrawal Liability pursuant to 29 U.S.C. § 1399(b)(2)(B) (the "Request for Review").

22. From December 2014 through June 2015, the Fund and Nu-Cast entered into a series of tolling agreements, pursuant to which the Fund agreed to toll until July 17, 2015 Nu-Cast's deadline to initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1).

23. However, neither Nu-Cast nor any other member of the Nu-Cast Controlled Group initiated arbitration pursuant to 29 U.S.C. § 1401(a)(1). Consequently, the full outstanding amount of the Withdrawal Liability is due and owing pursuant to 29 U.S.C. § 1401(b)(1).

24. Moreover, after June 30, 2015, the Nu-Cast Controlled Group ceased making interim payments, and it has not made any payments towards the Withdrawal Liability since that date.

25. Accordingly, on or about September 23, 2015, the Nu-Cast Controlled Group, through Nu-Cast, received a notice from the Fund pursuant to 29 U.S.C. § 1399(c)(5)(A), in which the Fund advised the Nu-Cast Controlled Group that its Withdrawal Liability payments

were past due and forewarned the Nu-Cast Controlled Group of the consequences of failing to pay the Withdrawal Liability, including the possibility that the Fund may file suit to collect the delinquent Withdrawal Liability (the "Past Due Notice").

26. The Nu-Cast Controlled Group did not make any payments towards the Withdrawal Liability after receiving the Past Due Notice. Accordingly, the Nu-Cast Controlled Group fell into default within the meaning of 29 U.S.C. § 1399(c)(5).

27. Then, on December 27, 2015, Nu-Cast filed for Chapter 11 bankruptcy (15-bk-58539, E.D. Mich. Bankr.).

28. As of October 3, 2016, Nu-Cast owes the Fund $1,957,424.40 in Withdrawal Liability principal.

### III. The Individual Defendants' Capital Contributions to Nu-Cast.

29. At all relevant times, Defendants Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli (collectively, the "Individual Defendants") were all shareholders of Nu-Cast. In addition, non-party Mario Ledda was also a shareholder of Nu-Cast at all relevant times prior to April 29, 2010.

30. Further, at all relevant times, Giulio Ledda was Nu-Cast's president.

31. On or around April 29, 2010, Mario Ledda died. Upon his death, his shares in Nu-Cast became property of his estate.

32. Then, on or around September 1, 2012, Giulio Ledda contributed $105,154.00 to Nu-Cast (the "Giulio Ledda Contribution").

33. Similarly, on or around September 1, 2012, Bruno Ledda contributed $72,700.00 to Nu-Cast (the "Bruno Ledda Contribution").

34. Likewise, on or around September 1, 2012, Giuseppe Cicarelli contributed $72,700.00 to Nu-Cast (the "Giuseppe Cicarelli Contribution" and, together with the Giulio Ledda Contribution and the Bruno Ledda Contribution, the "2012 Contributions").

35. Subsequently, on or around September 16, 2012, Mario Ledda's estate waived its shareholder interest in Nu-Cast, and the Individual Defendants each received a portion of the Nu-Cast shares that the estate had previously owned.

36. Notably, Nu-Cast did not pledge any collateral in exchange for receiving the 2012 Contributions.

37. Further, Nu-Cast did not agree to any repayment schedules for any of the 2012 Contributions.

38. Nu-Cast, through Giulio Ledda, executed purported promissory notes in which it promised to repay the 2012 Contributions and alleged that it would use those contributions to repurchase the Nu-Cast shares held by Mario Ledda's estate.

39. Yet, Nu-Cast did not actually use the money it received through the 2012 Contributions to repurchase the shares held by Mario Ledda's estate. In fact, Nu-Cast did not ever pay anything to Mario Ledda's estate to reacquire the shares.

40. Instead, on or around September 25, 2012, Ledda Brothers paid Mario Ledda's estate $268,217.00 for the Nu-Cast shares that the estate owned. Notably, Ledda Brothers obtained substantially all of the $268,217.00 from selling a piece of real estate that Ledda Brothers—not Nu-Cast—owned.

41. Thus, in effect, the Individual Defendants' 2012 Contributions were contributions to Nu-Cast in exchange for which Nu-Cast provided those shareholders additional shares in Nu-Cast.

42. For all the foregoing reasons, the 2012 Contributions were capital contributions and not shareholder loans.

### COUNT I – AGAINST LEDDA BROTHERS FOR WITHDRAWAL LIABILITY

43. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. This count is brought against Defendant Ledda Brothers.

45. Ledda Brothers, as a member of the Nu-Cast Controlled Group, is jointly and severally liable to the Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Ledda Brothers and on behalf of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b) for:

(i) $1,852,982.59 in withdrawal liability principal;

(ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

(iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

### COUNT II –AGAINST GIULIO LEDDA, BRUNO LEDDA, AND GIUSEPPE CICARELLI UNDER MPPAA'S EVADE OR AVOID PROVISION

46. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. This Count is brought against Defendants Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli.

48. 29 U.S.C. § 1392(c) prohibits a transaction if a principal purpose of the transaction is to evade or avoid withdrawal liability.

49. As noted, at all relevant times, Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli were shareholders of Nu-Cast, and Giulio Ledda was Nu-Cast's president.

50. In 2007, Nu-Cast, through its attorney, requested and received from the Fund an estimate of its withdrawal liability. That estimate stated that the estimated principal amount of Nu-Cast's withdrawal liability would be $797,923.21.

51. Similarly, in 2008, Nu-Cast requested and received from the Fund an estimate of its withdrawal liability. That estimate stated that the estimated principal amount of Nu-Cast's withdrawal liability would be $916,364.86.

52. Likewise, in 2010, Nu-Cast requested and received from the Fund an estimate of its withdrawal liability. That estimate stated that the estimated principal amount of Nu-Cast's withdrawal liability would be $1,389,520.56.

53. Then, in June 2013, as a result of failed collective bargaining negotiations between Nu-Cast's employees and the Local Union, all of Nu-Cast's employees who were members of the Local Union stopped contributing to the Local Union and/or revoked their membership in the Local Union.

54. Then, on or around November 21, 2013, Nu-Cast, through its attorney, sent a letter to the Fund in which Nu-Cast claimed that it had withdrawn from the Fund due to the failed collective bargaining negotiations between Nu-Cast's employees and the Local Union.

55. The day after Nu-Cast sent its November 21, 2013 letter to the Fund in which it claimed it had withdrawn from the Fund, Nu-Cast made a series of transfers to Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli in which it repaid those shareholders for the 2012 Contributions.

56. Specifically, on November 22, 2013, Nu-Cast transferred at least $108,263.40 to Giulio Ledda (the "Transfer to Giulio Ledda").

57. Similarly, on November 22, 2013, Nu-Cast transferred at least $74,849.74 to Giuseppe Cicarelli (the "Transfer to Giuseppe Cicarelli").

58. Likewise, on November 22, 2013, Nu-Cast transferred at least $74,849.74 to Bruno Ledda (the "Transfer to Bruno Ledda" and, together with the 2013 Transfer to Giulio Ledda and the 2013 Transfer to Giuseppe Cicarelli, the "Transfers").

59. Then, on or around December 16, 2013, the Local Union sent Nu-Cast a letter in which it officially waived its representation of all of Nu-Cast's employees due to the fact that those employees, as stated above, had stopped contributing to the Local Union and/or had revoked their membership in the Local Union in June 2013.

60. Thus, the Transfers were made after Nu-Cast requested multiple estimates of Nu-Cast's withdrawal liability, after Nu-Cast's employees had ceased contributing to the Local Union and/or had revoked their membership in the Local Union, and a day after Nu-Cast sent the Fund a letter in which it claimed that it had withdrawn from the Fund.

61. Further, the Transfers repaid the 2012 Contributions, which were capital contributions and not valid shareholder loans.

62. In addition, Nu-Cast failed to pay the Fund the full amount of the Withdrawal Liability prior to making the Transfers and, in fact, still has not paid the Fund the full amount of the Withdrawal Liability.

63. Accordingly, for all the foregoing reasons and upon information and belief, a principal purpose behind the Transfers was to evade or avoid the payment of the Withdrawal Liability to the Fund.

64. Under 29 U.S.C. § 1392(c), the Transfers may be disregarded and each of the Individual Defendants may be held liable to the Fund for the amount each of them received through the Transfers.

**WHEREFORE**, Plaintiffs request the following relief:

(a) That this Court void and disregard the Transfers;

(b) That this Court enter judgments against Giulio Ledda, Bruno Ledda, and Giuseppe Cicarelli and on behalf of Plaintiffs for the value of all funds and assets that each of those Individual Defendants received as a result of the Transfers, pre-judgment interest, the greater of interest or liquidated damages, attorney's fees, costs, and other and future amounts to be proven in this case;

(c) That this Court impose a constructive trust on all funds and assets transferred from Nu-Cast to the Individual Defendants through the Transfers, on any property purchased using said funds, and on any funds that the Individual Defendants have obtained in exchange for said assets; and

(d)     Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Andrew J. Herink*
Andrew J. Herink (ARDC #06303510)
CENTRAL STATES FUNDS
Law Department
9377 West Higgins Road, 10th Floor
Rosemont, Illinois 60018
(847) 939-2458
aherink@centralstatesfunds.org

October 3, 2016                               ATTORNEY FOR CENTRAL STATES